1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    TRAVIS SHANLEY,                          No.  2:23-cv-02586-DC-JDP

12                 Plaintiff,

13          v.                                 ORDER DENYING MOTION TO REMAND

14    TRACY LOGISTICS LLC, et al.,             (Doc. No. 9)

15                 Defendants.

16

17          This matter is before the court on Plaintiff Travis Shanley's motion to remand this action

18   to the San Joaquin County Superior Court. (Doc. No. 9). The pending motion was taken under

19   submission to be decided on the papers pursuant to Local Rule 230(g). (Doc. No. 11.) For the

20   reasons explained below, the court will deny Plaintiff's motion to remand.

21                                      **BACKGROUND**

22          Defendant C&S Wholesale Grocers, LLC, formerly C&S Wholesale Grocers Inc.,

23   operates distribution center warehouses throughout the state of California through its subsidiaries

24   Defendants C&S Logistics of Sacramento/Tracy LLC and C&S Logistics of Fresno LLC, which

25   in turn operate through their subsidiaries Defendants Tracy Logistics LLC ("Tracy"), Stockton

26   Logistics LLC, Fresno Logistics LLC, and Sacramento Logistics, LLC, (collectively,

27   "Defendants"). (Doc. No. 1-1 at ¶¶ 2, 33.) In their notice of removal, Defendants allege

28   Defendant Tracy and General Teamsters Local No. 439 ("the Union") entered into a collective

                                             1

1   bargaining agreement that applied to work performed by covered employees from June 1, 2021,

2   through May 31, 2028 ("the 2021 CBA"). (Doc. Nos. 1 at ¶ 14; 1-3 at ¶ 5.)

3       Plaintiff was employed by Defendant Tracy at its Stockton, California facility as a

4   "Warehouse Selector, In Training" in May 2022. (Doc. Nos. 1 at ¶¶ 19, 23; 1-1 at ¶¶ 20, 24–25;

5   1-3 at ¶ 4.)  Plaintiff alleges his work consisted of moving a pallet jack up and down aisles in the

6   warehouse, taking items off shelves, and loading them onto pallets to be ultimately shipped to

7   customers and/or retail stores. (Doc. No. 1 at ¶ 40.) Defendants contend that at all times during

8   his employment with Defendant Tracy, Plaintiff was represented by the Union and employed

9   pursuant to the 2021 CBA between Defendant Tracy and the Union. (Doc. Nos. 1 at ¶ 14; 1-3 at ¶

10  4.)

11      Plaintiff was classified as a non-exempt employee and was paid on an hourly basis.

12  (Doc. No. 1-1 at ¶¶ 4-5.) Plaintiff was also compensated on a regular basis with bonuses. (*Id*. at

13  ¶ 5.) Plaintiff worked five days a week during most weeks and regularly worked more than eight

14  hours a day and more than 40 hours a week. (*Id*. at ¶ 6.) Plaintiff's employment with Defendant

15  Tracy ended in or around December 2022. (Doc. Nos. 1 at ¶ 19; 1-1 at ¶ 4; 1-3 at ¶ 4.)

16      Plaintiff initiated this lawsuit by filing a representative action complaint under

17  California's Private Attorneys General Act, California Labor Code §§ 2698, *et seq*., ("PAGA"),

18  on behalf of himself and all other aggrieved employees, in the San Joaquin County Superior

19  Court on September 21, 2023. (Doc. No. 1 at ¶ 1; 1-1.)[1] In the complaint, Plaintiff asserts a single

20  cause of action against Defendants for violation of PAGA, predicated on Defendants' alleged

21  violations of California's wage and hour laws, including:

22          (1) failure to pay minimum wages for all hours worked; (2) failure to
            pay overtime wages; (3) failure to pay overtime, vacation pay, sick
23          leave, and meal and rest break premiums at the correct regular rate
            of pay, (4) failure to provide sick leave and COVID-19 supplemental
24          sick leave and to provide notice of accrued sick leave available; (5)
            failure to provide meal breaks; (6) failure to authorize and permit rest
25

26  [1] That same day, Plaintiff also filed a separate declaratory relief action against Defendants in San
    Joaquin County Superior Court. (Doc. No. 13 at 8.) Defendants removed the declaratory relief
27  action to this court on November 8, 2023. *Shanley v. Tracy Logistics LLC, et al*., No. 2:23-cv-
    02608-DC-JDP (Doc. No. 1) ("*Shanley II*"). On November 15, 2024, the court issued an order
28  relating the declaratory relief action (*Shanley II*) to this case (*Shanley I*). (Doc. No. 6.)

1
2
3

            breaks; (7) failure to reimburse business expenses; (8) failure to comply with California quota laws; (9) failure to provide a safe and healthful workplace; (10) failure to timely pay wages during employment; (11) failure to provide accurate wage statements; and (12) failure to pay all wages due upon termination.

4   (*Id*. at ¶¶ 162–63.) For relief, Plaintiff seeks civil penalties pursuant to PAGA and an award of

5   attorneys' fees and costs, with prejudgment interest, as permitted by law. (*Id*. at 30.)

6         On November 8, 2023, Defendants timely removed this action to federal court from the

7   San Joaquin County Superior Court. (Doc. No. 1.) In their notice of removal, Defendants assert

8   the court has original jurisdiction over this action pursuant to federal question jurisdiction because

9   Plaintiff's alleged violations of California's wage and hour laws are preempted under the Labor

10  Management Relations Act, 29 U.S.C. § 185 ("LMRA"). (Doc. No. 1 at 2) (citing 28 U.S.C. §§

11  1331, 1441(a), 1446). Separately, Defendants contend the court possesses diversity jurisdiction

12  and supplemental jurisdiction over this case. (*Id*.) (citing 28 U.S.C. 1332(a)).

13        In support of removal, Defendants attached the 2021 CBA agreement between Defendant

14  Tracy and the Union that applied to work performed by covered employees from June 1, 2021,

15  through May 31, 2028. (Doc. No. 1-3 at 4–28.) The 2021 CBA agreement provides it "shall be

16  effective upon ratification…" (*Id*. at 28.) On that same page, a representative signed on behalf of

17  Defendant Tracy on December 13, 2022. (*Id*.) The agreement contains no signature from a Union

18  representative. (*See generally* Doc. No. 1-3 at 4–28.)

19        Plaintiff filed the pending motion to remand this action back to San Joaquin County

20  Superior Court on December 20, 2023, asserting that removal was improper because Defendants

21  had not established that this court has subject matter jurisdiction over this case. (Doc. No. 9.)

22  Defendants filed an opposition to Plaintiff's motion to remand on January 30, 2024. (Doc. No.

23  20.) In support of their motion, Defendants attached the 2021 CBA agreement between Defendant

24  Tracy and the Union. (Doc. Nos. 20-1; 20-3 at 6–30.) Unlike the agreement Defendants attached

25  to their notice of removal, the agreement attached to their opposition was signed by both a

26  representative of Defendant Tracy on December 13, 2022, and a representative on behalf of the

27  Union on January 20, 2023. (Doc. No. 20-3 at 30.) Plaintiff filed a reply in support of his motion

28  to remand on February 15, 2024. (Doc. No. 21.)

1

**LEGAL STANDARD**

2  "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized

3  by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citing *Kokkonen v.*

4  *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A federal district court has jurisdiction

5  over a civil action removed from state court only if the action could have been brought in the

6  federal court originally. 28 U.S.C. § 1441(a) ("The removal jurisdiction of the federal courts is

7  derived entirely from the statutory authorization of Congress.").

8  Federal courts have original jurisdiction of all civil actions arising under the Constitution,

9  laws, or treaties of the United States. 28 U.S.C. §§ 1331. For an action to be removed based on

10  federal questions these civil actions raise, the complaint must establish either that federal law

11  creates the cause of action or that the plaintiff's right to relief necessarily depends on the

12  resolution of substantial questions of federal law. *Franchise Tax Bd. State of Cal. v. Constr.*

13  *Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10–13 (1983). Federal courts also possess

14  diversity jurisdiction over all civil actions between citizens of different states in which the alleged

15  amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

16  The party invoking removal bears the burden of establishing removal was proper. *Hamsen*

17  *v. Grp. Health Coop.*, 902 F.3d 1051. 1057 (9th Cir. 2018) (citing *Geographic Expeditions, Inc.*

18  *v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1101, 1107 (9th Cir. 2010)); *see Gaus v. Miles, Inc.*,

19  980 F.2d 564, 566 (1992) ("The 'strong presumption' against removal jurisdiction means that the

20  defendant always has the burden of establishing that removal is proper.") (citations omitted). The

21  removal statutes are to be strictly construed, and any doubt as to the right of removal must be

22  resolved in favor of remanding to state court. *Durham v. Lockheed Martin Corp.,* 445 F.3d 1247,

23  1252 (9th Cir. 2006); *Matheson v. Progressive Specialty Ins. Co*., 319 F.3d 1089, 1090 (9th Cir.

24  2003) (citing *Gaus*, 980 F.2d at 566). "If at any time before final judgment it appears that the

25  district court lacks subject matter jurisdiction [over the removed action], the case shall be

26  remanded." 28 U.S.C. § 1447(c).

27  /////

28  /////

4

**ANALYSIS**

In his motion to remand, Plaintiff contends removal was improper for several reasons. Plaintiff avers LMRA preemption does not apply in this case, complete diversity does not exist because PAGA claims belong solely to the state of California, and Defendants have failed to establish this action meets the requisite amount in controversy. (Doc. No. 9.) Because the court finds it has subject matter jurisdiction over this action through preemption under the LMRA, the court will not address Plaintiff's other arguments.[2]

**A.     Preemption Under the LMRA**

Under the "well-pleaded complaint" rule, "federal jurisdiction exists only when a federal question is present on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). However, "[a] corollary to the well-pleaded complaint rule is the 'complete preemption' doctrine, which applies in cases in which 'the preemptive force of a statute is so extraordinary that it converts an ordinary state-common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *In re NOS Commc'ns, MDL No. 1357*, 495 F.3d 1052, 1057 (9th Cir. 2007) (quoting *Caterpillar*, 482 U.S. at 393). Section 301 of the LMRA is one such extraordinary preemptive force. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2018) (citing *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)).

Congress enacted the LMRA to "promote the full flow of commerce" by providing "orderly and peaceful procedures for preventing [] interferences by [employees or employers] with the legitimate rights of the other." *Columbia Export Terminal, LLC v. Int'l Longshore and Warehouse Union*, 23 F. 4th 836, 840–41 (9th Cir. 2022) (quoting 29 U.S.C. §141(b)). Under § 301 of the LMRA, "[s]uits for violation of contracts between an employer and a labor organization…may be brought in any district court of the United States." 29 U.S.C. § 185(a); *see McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1009 (9th Cir. 2018) (Section 301 of the LMRA "vests federal courts with jurisdiction" to hear suits between an employer and labor

---

[2] Defendants request that the court take judicial notice of court filings related to attorneys' fees to support their assertion that the amount in controversy requirement for diversity jurisdiction is met here. (Doc. No. 20-1.) Because the court finds it has federal question jurisdiction through preemption under the LMRA, the court will deny Defendants' request as moot.

organization "without respect to the amount in controversy or without regard to the citizenship of the parties.") (citing 29 U.S.C. § 185(a)).

On its face, § 301 reads as a jurisdictional statute, and "contains no express language of pre-emption." *Curtis*, 913 F.3d at 1151. However, the Supreme Court has long interpreted the LMRA as authorizing federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts. *Id.* (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985) and *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962)). Thus, preemption by the LMRA may arise in cases where a plaintiff files a complaint asserting state law claims, but his employment was governed by a collective bargaining agreement.

The preemptive power of § 301 of the LMRA is not limitless. Section 301 may not be read so broadly as to "pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Curtis*, 913 F.3d at 1152 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)). If a "claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to [a collective bargaining agreement] in mounting a defense." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001). Likewise, if a contract cannot waive or alter a state law, and if the rights of the state law can be enforced without consideration of the contract's terms, § 301 preemption does not apply.  *Miller v. AT & T Network Sys.*, 850 F.2d 543, 546 (9th Cir. 1988); *see Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) ("Critically, 'not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301.'").

To determine if § 301 preemption applies, courts look to the Ninth Circuit's two-step analysis articulated in *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053 (9th Cir. 2007). *Curtis*, 913 F.3d at 1152. First, if the asserted cause of action involves a "right [that] exists solely as a result of the [collective bargaining agreement]," then the claim is preempted, and the analysis ends without proceeding to step two. *Id.* (quoting *Kobold*, 832 F.3d at 1032; *Burnside*, 491 F.3d at 1059; *see also Jimenez v. Young's Mkt. Co., LLC*, No. 3:21-cv-02410-EMC, 2021 WL 5999082, at *7 (N.D. Cal. Dec. 20, 2021) (collecting cases holding that the affirmative defense of § 301

1   alone is sufficient to raise a federal question when a collective bargaining agreement meets the

2   exemption requirements under the applicable statute  ).

3       If not, the court proceeds to the second step and asks whether a plaintiff's state law right

4   is nevertheless "substantially dependent" on analysis of the collective bargaining agreement.

5   *Burnside*, 491 F.3d at 1059. This second step "turns on whether the claim cannot be resolved by

6   simply 'look[ing] to' versus 'interpreting' the [collective bargaining agreement]." *Curtis*, 913

7   F.3d at 1153 (citing *Kobold*, 832 F.3d at 1033). Interpretation is construed narrowly in this

8   context, it means something more than consider, refer to, or apply. *Id.*; *Balcorta v. Twentieth

9   Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000). If claims are dependent on the

10  interpretation of the collective bargaining agreement, then the claim is preempted by § 301; if not,

11  the claim may proceed under state law. *Burnside*, 491 F.3d at 1059-60.

12      Before turning to the *Burnside* analysis, the court must address whether Plaintiff is

13  covered by a qualifying collective bargaining agreement. When a plaintiff is not covered by a

14  qualifying collective bargaining agreement, the court "lacks subject matter jurisdiction over [a

15  plaintiff's] underlying predicate California Labor Code violations and thus, lacks jurisdiction over

16  the PAGA claim." *Dominguez v. Leprino Foods Co.*, No. 1:22-cv-01431-ADA-EPG, 2023 WL

17  7104801, at *3 (E.D. Cal. Oct. 27, 2023); *see Stoddart v. Heavy Metal Iron, Inc.*, No. 2:22-cv-

18  01532-DAD-DB, at *5 (E.D. Cal. Mar. 15, 2023) ("Because defendants have failed to show that

19  plaintiff is subject to a qualifying [collective bargaining agreement], plaintiff's individual claims

20  for California Labor Code violations do not involve a right that 'exists solely as a result of the

21  [collective bargaining agreement],' and thus § 301 does not preempt them.").

22      Plaintiff contends Defendants have not proven the existence of a qualifying collective

23  bargaining agreement because Defendants did not provide an agreement that was signed and

24  effective during his employment. (Doc. Nos. 9-1 at 12–13; 21 at 2–3). However, contrary to

25  Plaintiff's contention, collective bargaining agreements can be effective retroactively, so the fact

26  that the 2021 CBA attached to Defendants' opposition was signed a month after Plaintiff's

27  employment ended does not end the inquiry. *See, e.g. Winery, Distiller & Allied Workers Union,

28  Local 186 v. E & J Gallo Winery, Inc.*, 857 F.2d 1353, 1357–58 (9th Cir. 1988); *U. of Hawaii*

7

1   *Pro. Assembly. v. Cayetano*, 183 F.3d 1096, 1100 (9th Cir. 1999); *see Hall v. Live Nation*

2   *Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1198 (C.D. Cal. 2015) ("Employers and unions…can

3   enter into a valid [collective bargaining agreement] that retroactively covers the bargaining

4   period."). Here, the signed 2021 CBA states an effective date of June 1, 2021, through May 31,

5   2028. (Doc. No. 20-3 at 6). Plaintiff was employed with Defendants from May 2022 through or

6   around December 2022. (Doc. Nos. 1 at ¶ 19; 1-1 at ¶¶ 4, 25; -3 at ¶ 4). Thus, Defendants'

7   submission of a signed collective bargaining agreement with an effective starting date of June 1,

8   2021, is sufficient to meet their burden of showing that Plaintiff was covered by a qualifying

9   collective bargaining agreement. *See Olea v. Teichert Pipelines, Inc.*, No. 2:21-cv-01675-RGK-

10  PD, 2021 WL 1839683, at *2 (C.D. Cal. May 7, 2021) (finding a collective bargaining agreement

11  that was signed two months after its effective starting date valid).

12      Plaintiff asserts LMRA preemption does not apply in this case because his complaint does

13  not reference the 2021 CBA in any of his allegations. (Doc. No. 9-1 at 12.) In essence, Plaintiff

14  asserts that he can artfully plead his allegations of wage and hour violations to avoid LMRA

15  preemption by not mentioning the 2021 CBA. (*See id*.) The court finds Plaintiff's argument

16  unavailing. As noted above, the Ninth Circuit has expressly found that "§ 301 has such

17  'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into

18  one stating a federal claim for purposes of the well-pleaded complaint rule." *Curtis*, 913 F.3d at

19  1152 (citation omitted). Plaintiff's omission of the 2021 CBA between Defendant Tracy and the

20  Union in his complaint does not allow him to avoid preemption under § 301.

21      While Plaintiff "artfully styles his complaint as containing only one claim for 'violation of

22  PAGA,' that claim rests upon multiple discreet claims." *Blackwell v. Com. Refrigeration*

23  *Specialists, Inc.*, No. 2:20-cv-02281-KJM-CKD, 2021 WL 2634501, at *4 (E.D. Cal. Jun. 25,

24  2021) (citing *Franco v. E-3 Sys.*, No. 4:19-cv-01453-HSG, 2019 WL 6358947, at *4 (N.D. Cal.

25  Nov. 8, 2019)) ("PAGA claims are derivative of the predicate California Labor Code violations,

26  and therefore rise and fall with those underlying claims."). Accordingly, when there are multiple

27  allegations of wage and hour violations underlying a singular PAGA claim, the district court

28  considers the preemption issue for each violation separately. *Id.*

8

Defendants assert Plaintiff's allegations of overtime, meal and rest break, vacation wages, and paid sick leave violations directly implicate the 2021 CBA. (Doc. No. 1 at ¶ 16.)[3] The court will apply the *Burnside* analysis to each of these alleged violations. *See Sykes v. F.D. Thomas, Inc.*, No. 3:20-cv-03616-VC, 2021 WL 343960, at *1 (N.D. Cal. Feb. 2, 2021) ("each of the alleged Labor Code violations must be analyzed individually under the Ninth Circuit's two-step test for complete preemption as set out in *Burnside*.").

1.   Overtime

Plaintiff predicates his PAGA claim in part on allegations that Defendants failed to pay overtime wages for all hours worked and failed to pay overtime premium wages at legally sufficient rates in violation of California Labor Code section 510. (Doc. No. 1-1 at ¶ 163.) Defendants argue Plaintiff's allegations of overtime violations are preempted by a statutory exemption provided in California Labor Code section 514 because the 2021 CBA satisfies the criteria set forth in that provision. (Doc. No. 1 at ¶ 18.)

For the section 514 exemption to apply, and therefore to trigger preemption, the 2021 CBA must meet the following three criteria:  (1) "expressly provide[] for the wages, hours of work, and working conditions of the employees"; (2) "provide[] premium wage rates for all overtime hours worked"; and (3) provide "a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514; *see also Curtis*, 913 F.3d at 1154.[4]

Defendants aver that under the 2021 CBA, Plaintiff was entitled to a regular hourly rate of not less than $21.375 per hour in 2022. (Doc. No. 1 at ¶ 19.) Defendants assert that the rate was 42.5% more than the applicable 2022 California minimum wage of $15 per hour, and therefore

---

[3] Defendants appear to have abandoned their argument that Plaintiff's allegation of reimbursement violations is directly implicated in the 2021 CBA and that interpretation of the 2021 CBA is essential to the resolution of Plaintiff's alleged reimbursement violation. (*See generally* Doc. No. 20.) Therefore, the court will not address whether Plaintiff's alleged reimbursement violation is preempted under *Burnside*.

[4] The parties do not contest that the 2021 CBA expressly provides for the wages, hours of work, and working conditions of the employees and provides premium wage rates for all overtime hours worked. (*See generally* Doc. Nos. 9-1 at 16–17; 20 at 15–17; 20-3 at 16–26, 28–29.)

1    the 2021 CBA satisfies the requirements of section 514. (*Id.*) Defendants argue that "[b]ecause

2    [the 2021 CBA met] the requirements of [s]ection 514, Plaintiff's right to overtime exists solely

3    as a result of the [2021] CBA, and therefore is preempted under § 301.'" (*Id.*) (citation omitted)

4    Defendants' argument comports with the law. "[T]he Ninth Circuit's ruling in *Curtis* is decisive

5    in demonstrating that a plaintiff's right to unpaid overtime is preempted under the first step of the

6    Ninth Circuit's preemption test if a [collective bargaining agreement] meets the requirements of

7    [section] 514." *Martinez v. Omni Hotels Mgmt. Corp.*, 514 F. Supp. 3d 1227, 1236 (S.D. Cal.

8    2021); *see also Dent v. Nat'l Football League*, 968 F.3d 1126, 1135 (9th Cir. 2020).

9         Plaintiff acknowledges the right to unpaid overtime is preempted if the 2021 CBA meets

10   the requirements of section 514, but he asserts Defendants have not met their burden to show that

11   all the aggrieved employees were paid at a base rate not less than 130% of the minimum wage.

12   (Doc. Nos. 9-1 at 16–17; 21 at 3.)  Defendants counter by pointing out that Plaintiff's "exact

13   arguments" were rejected in *Sachs v. Pankow Operating, Inc.*, No. 2:21-cv-08998-AB-ADS, 2022

14   WL 489696, (C.D. Cal. Feb. 16, 2022), and they need only show Plaintiff and employees with the

15   same job classification's wages were 30% above the state statutory minimum wage. (Doc. No. 20

16   at 16.)[5] Separately, Defendants contend that at no time during the applicable period was any

17   employee covered by the 2021 CBA paid hourly regular rates less than 130% of the state

18

19   ───────────────

     [5] District courts within the Ninth Circuit are divided on the question of whether a collective
20   bargaining agreement fails to meet section 514's requirements if it does not meet the
     requirements with respect to all employees. As Defendants have pointed out, some courts have
21   determined it was not necessary to show a collective bargaining agreement provided 130% of the
     minimum wage to every employee. *Sachs*, 2022 WL 489696, at *6; *Huerta v. Doubletree Emp.*
22   *LLC*, No. 8:23-cv-02433-CJC-ADS, 2024 WL 890548, at *3 (C.D. Cal. Mar. 1, 2024); *Rodriguez*
     *v. USF Reddaway, Inc.*, No. 2:22-cv-00210-TLN-DB, 2022 WL 18012518, at *4 (E.D. Cal. Dec.
23   30, 2022). However, a substantial number of district courts have concluded that a collective
     bargaining agreement must satisfy section 514's requirements with respect to all covered
24   employees. *Huffman v. Pac. Gateway Concessions LLC*, No. 19-cv-01791-PJH, 2019 WL
     2563133, at *5–6 (N.D. Cal. Jun. 21, 2019); *Rooney v. Save Mart Supermarkets*. No. 2:20-cv-
25   00671-JAM-FEB, 2020 WL 3819481, at *2–3 (E.D. Cal. Jul. 8, 2020); *see Camarena-Regalado*
     *v. S. Cal. Permanente Med. Grp.*, No. 2:22-cv-06010 JAK-JPR, 2023 WL 6216708, at *5, n. 1
26   (C.D. Cal. Sep. 25, 2023) (citing cases). The court finds it unnecessary to weigh in on whether the
     2021 CBA must comply with the requirements of section 514 for all employees covered by the
27   2021 CBA, and not just some, because the court finds that the 2021 CBA at issue fully meets the
     requirements of section 514.
28

1    statutory minimum wage. (*Id.*)

2          Here, even the lowest hourly rates identified in the 2021 CBA—$19.59 (Dec. 11, 2022),

3    and $20.29 (June 2023)—were at least 30% above the state statutory minimum during the

4    applicable time period. (Doc. No. 20-3 at 28.)[6] Accordingly, the court finds that the 2021 CBA

5    meets the requirements of section 514. *See Morgan v. Rohr, Inc.*, No. 3:20-cv-574-GPC-AHG,

6    2023 WL 8811816, at *12 (S.D. Cal. Dec. 20, 2023) ("Defendants have provided evidence of

7    [collective bargaining agreements] that are valid, provided for wages, hours of work, and working

8    conditions of the employees; and provided a regular rate of hourly pay that is at least 1.3 times

9    California minimum wage.") *see also Div. of Labor Stds. Enf't v. Save Mart Supermarkets*, No.

10   2:21-cv-07402-ODW-E, 2022 WL 837206, at *6 (C.D. Cal. Mar. 21, 2022) (the court looked to

11   the regular rate of pay of the lowest paid employees under the collective bargaining agreement's

12   wage table to determine if the plaintiff's claims were preempted). Having found the first prong of

13   the *Burnside* test applies and the LMRA preempts Plaintiff's alleged overtime violations, the

14   court need not address the second prong of whether Plaintiff's alleged overtime violations require

15   interpretation of the 2021 CBA's terms. 419 F.3d at 1059 ("If the right exists solely as a result of

16   the [collective bargaining agreement], then the claim is preempted, and our analysis ends there.").

17          2.      Paid Sick Leave

18          Like Plaintiff's allegations of overtime violations, Defendants contend Plaintiff's

19   purported paid sick leave violations are preempted by a statutory exemption provided in

20   California Labor Code section 245.5(a)(1). (Doc. No. 20 at 15.) For the section 245.5(a)(1)

21   exemption to apply, a collective bargaining agreement must meet the following criteria: (1)

22   "expressly provide[] for the wages, hours of work, and working conditions of employees, (2)

23   "provide[] for paid sick days or a paid leave or paid time off policy that permits the use of sick

24   days for those employees," (3) provide "final and binding arbitration of disputes concerning the

---

26   [6] Defendants also attached a declaration from Defendants' human resources associate, in which
     he states that "all California Employees worked at an hour rate at or above: (a) $19.50 from July

27   11, 2022, to December 31, 2022; (b) $20.15 from January 1, 2023, to December 31, 2023). (*Id.* at
     2–3.) While these amounts are lower than what was proffered in the 2021 CBA (Doc. No. 20-3 at

28   28), the amounts are still 130% of California's minimum wage.

1    application of its paid sick days provisions," (4) provide "premium wage rates for all overtime

2    hours worked," and (5) regular hourly rate of pay of not less than 30 percent more than the state

3    minimum wage rate." Cal. Lab. Code § 245(a)(1). The parties' arguments parallel those made

4    regarding Plaintiff's alleged overtime violations. (Doc. Nos. 20 at 15–17; 21 at 3.)[7] Therefore, the

5    court finds that Plaintiff's alleged paid sick leave violations are likewise preempted.

6              3.    <u>Meal and Rest Breaks</u>

7          In support of removal, Defendants contend the 2021 CBA contains provisions specifically

8    addressing Plaintiff's alleged meal and rest break violations and "[c]onsequently interpretation of

9    the 2021 CBA is essential to the Court's resolution of Plaintiff's claims" under step two of

10   *Burnside*. (Doc. No. 1 at ¶¶ 15–16.)

11         In his motion, Plaintiff argues Defendants made no effort to meet their burden of showing

12   that Plaintiff's meal and rest break violations will require construction or extensive interpretation

13   of the 2021 CBA. (Doc. No. 9-1 at 18.) Specifically, Plaintiff asserts Defendants' notice of

14   removal provided a laundry list of where the 2021 CBA describes hours and terms but failed to

15   offer any analysis of why these items will require interpretation of the 2021 CBA. (*Id.*) In

16   opposition, Defendants argue the 2021 CBA did not "expressly define" the regular rate or the

17   term "straight-time hourly rate." (Doc. No. 20 at 18.) Defendants analogize this case to *McKinley*

18   *v. Southwest Airlines Co.* and conclude that "in order to assess whether Tracy paid . . . break

19   premiums . . . at the proper rate, the court will necessarily have to 'examine each form of pay

20   provided by the [2021] CBA, determine when that pay was due, and then decide whether the pay

21   should have been included in Plaintiff's regular rate.'" (*Id.*) (citing *McKinley v. Sw. Airlines Co.*,

22   No. 2:15-cv-02939-AB-JPR, 2015 WL 2431644, at *6 (C.D. Cal. May 19, 2015), *aff'd*, 680 F.

23   App'x 522 (9th Cir. 2017)).

24         The court finds Defendants' reliance on *McKinley* unavailing. In *McKinley*, the parties

---

[7] The parties do not contest that the 2021 CBA expressly provides for the wages, hours of work, working conditions of employees, paid sick days, or a paid leave or paid time off policy that permits the use of sick days for those employees, final and binding arbitration of disputes concerning the application of its paid sick days provisions, and premium wage rates for all overtime hours worked. (Doc. Nos. 20 at 15–17; 20-3 at 14–18, 21, 23–25, 28–29; 21 at 3)

1   disputed the method for calculating the regular rate of pay. 2015 WL 2431644, at *5–8 ("The

2   Court would have to interpret the [collective bargaining agreement] to determine whether the

3   types of remuneration Plaintiff identifies fall into [the Fair Labor Standards Act's] exceptions.");

4   *see also Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1056-66 (9th Cir. 2000) (the parties

5   disputed the method for calculating the regular rate); *Raphael v. Tesoro Ref. Mktg. Co., LLC*, No.

6   2:15-cv-02862-ODW-E, 2015 WL 3970293, at *6 (C.D. Cal. Jun. 30, 2015) (same). In contrast,

7   Defendants have not identified any active dispute between the parties for calculating the regular

8   rate of pay. Instead, the parties appear to agree the regular rate will be determined by analyzing

9   the different pay rates and bonuses for different job classifications and work categories and

10  applying those distinctions. (Doc. Nos. 20 at 18-19; 21 at 4.)

11          The *McKinley* court also held that the interpretation of the collective bargaining

12  agreement was necessary because the plaintiff's claims involved "many different provisions" and

13  "[i]n order to assess [the] Plaintiff's claim, the Court would have to examine the interaction of

14  those provisions." 2015 WL 2431644, at *8. Here, by contrast, Defendants have simply noted that

15  there may be provisions (sections 21.3 and 21.4) within the 2021 CBA that could implicate the

16  "straight-time hourly rate." (Doc. No. 20 at 19) (citing Doc. No. 20-3 at 29.) But Defendants offer

17  no analysis of how these provisions, or any provisions, would require the court to interpret the

18  2021 CBA. Defendants fail to identify any terms or issues that would complicate the court's

19  determination of the applicable regular rate. *C.f. Raphael*, 2015 WL 3970293, at *6 (the

20  defendant "describe[d] the complexity involved in calculating the proper wage and premium rates

21  under only a single [collective bargaining agreement], *highlighting essential terms* that…need[ed]

22  to be interpreted.") (emphasis added). Thus, Defendants have not made a sufficient showing that

23  interpretation of the 2021 CBA for Plaintiff's meal and rest break claim would be required. *See*

24  *Wilson-Davis v. SSP Am., Inc.*, 434 F. Supp. 3d 806, 813 (C.D. Cal. 2020) ("It is not enough for

25  Defendants to provide a laundry list of provisions that they allege the court must interpret to

26  resolve Plaintiff's claims; Defendants must explain why interpretation, as opposed to mere

27  reference to the [collective bargaining agreement] is necessary."); *See, e.g. Bruccheri v. Aramark*

28  *Unif. Servs., LLC*, No. 2:18-cv-00119-KJM-KJN, 2018 WL 5617197, at *5 (E.D. Cal. Oct. 30,

1   2018) ("Because resolving plaintiff's meal, rest and recovery period claims under [sections] 226.7

2   and 512 requires at most consulting, rather than interpreting, the relevant [collective bargaining

3   agreements]. . . these claims are not substantially dependant upon analysis of the [agreements]

4   and § 301 preemption does not apply."). Accordingly, the court finds Plaintiff's alleged meal and

5   rest break violations do not depend substantially on interpretation of the 2021 CBA, and

6   consequently are not preempted.

7          4.      Vacation Wages

8          Plaintiff further alleges Defendants failed to pay vacation wages at legally sufficient rates

9   in violation of California Labor Code section 227.3 (Doc. No. 1-1 at ¶ 163.) Section 227.3 states

10  "[u]nless otherwise provided by a collective-bargaining agreement, whenever a contract of

11  employment or employer policy provides for paid vacations, and an employee is terminated

12  without having taken off his vested vacation time, all vested vacation shall be paid to him as

13  wages at his final rate in accordance with such contract of employment…" Cal. Lab. Code §

14  227.3. In support of removal, Defendants argue the 2021 CBA did provide otherwise. (Doc. Nos.

15  1 at 8; 20 at 20.) Specifically, Defendants cite a portion of the 2021 CBA that states:

16              An employee who fails to work the requisite minimum number of
                hours during the twelve (12) months preceding the most recent
17              anniversary date or who is not in the employ of the Employer or an
                anniversary date shall not qualify for a vacation or for pay in lieu
18              thereof; provided, however, that for those employees who have been
                in the service of their Employer for more than one (1) year and who
19              fail to qualify for a full vacation, vacation benefits shall be prorated
                in accordance with the following schedule:   (there is to be no
20              proration of vacation benefits for hours worked during the first year
                of employment).
21

22  (Doc. No. 20 at 20) (citing Doc. No. 1-3 at 17-18.) Defendants aver the court will be required to

23  interpret the 2021 CBA to determine "[w]hether Plaintiff, who was employed by Tracy for less

24  than 12 months (*see* Doc No. 1-1, ¶ 25), and/or other putative aggrieved employees were entitled

25  to accrue paid vacation in the first instance and/or be paid 'in lieu thereof' for any alleged accrued

26  but unused vacation at the time of their termination . . . ." (Doc. No. 20 at 20.)

27          In support of their argument, Defendants rely on the decision in *Jaco v. Winco Holdings*

28  *Inc*. No. 1:18-cv-00301-DAD-EPG, 2019 WL 1438069, at *5–6 (E.D. Cal. Mar. 31, 2019), but

                                            14

the facts of that case are inapposite. In *Jaco*, the plaintiff was terminated for "gross misconduct" related to an alleged incident of theft. 2019 WL 1438069, at *1, 6. The applicable collective bargaining agreement stated that "[v]acation earned but not taken will not be paid to employees terminated for gross misconduct." *Id*. at *5. The court found that a determination of the plaintiff's vacation wage claim brought under section 227.3 would require interpreting the [agreement] to understand the meaning and significance of the term "gross misconduct." *Id*. at *6. The court concluded the plaintiff's vacation wage claim required analyzing the agreement and was therefore preempted under § 301 of the LMRA. *Id*.

Unlike *Jaco*, Defendants fail to identify any ambiguity or disputed terms that will require the court to analyze the 2021 CBA. Instead, the language of the 2021 CBA provision at issue is clear; it serves to limit who is entitled to vacation time to those who have been in the employ of Defendants for more than a year and work a requisite number of hours. (Doc. No. 20-3 at 19–20.) It was Defendants' burden to point out a provision that is under dispute that would require interpretation from the court, and they have not done so. Therefore, the court finds the LMRA does not preempt Plaintiff's allegations of vacation wage violations.

**B.      Supplemental Jurisdiction**

The court next considers whether it may exercise supplemental jurisdiction over Plaintiff's remaining allegations of violations that predicate his PAGA claim. *See* 28 U.S.C. § 1367(a); *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725 (1966) (holding that to exercise supplemental jurisdiction, "[t]he state and federal claims must derive from a common nucleus of operative fact"); *see also Brown v. Brotman Med. Ctr., Inc.*, 571 Fed. App'x 572, 576 (2014) (the court "may exercise supplemental jurisdiction over claims that are brought in conjunction" with a preempted claim).[8] "In deciding whether to exercise supplemental jurisdiction, courts consider 'the values of judicial economy, convenience, fairness, and comity[,]' but ultimately apply a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed." *Brooks v. FCI Lender Servs.*, No. 2:16-cv-02598-KJM-KJN, 2018 WL 495634,

---

[8] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1   at *2 (E.D. Cal. Jan. 22, 2018) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350

2   (1998)). Having found federal question jurisdiction through preemption under § 301 of the

3   LMRA with respect to Plaintiff's allegations of overtime and paid sick leave violations, the court

4   will exercise supplemental jurisdiction over Plaintiff's remaining violations. *See Jimenez*, 2021

5   WL 5999082, at *13 ("The preemption of one claim is sufficient to establish original jurisdiction

6   over those claims and a basis for supplemental jurisdiction as to all other claims.") (citations

7   omitted); *see also Josephson v. Lamon Constr. Co. Inc.*, No. 2:23-cv-00043-DAD-AC. 2023 WL

8   9183255, at *5 (E.D. Cal. Dec. 8, 2023) (exercising supplemental jurisdiction when a preempted

9   claim arose from the same employment relationship that other claims arose from); *Stendal v.*

10  *Mem'l Health Servs.*, No. 2:23-cv-01380-ODW-PDX, 2023 WL 3311845, at *4 (C.D. Cal. May

11  8, 2023) (similar); *see also Shwiyhat v. Martin Marietta Materials, Inc.*, No. 3:23-cv-00283-JSC,

12  2023 WL 6626129, at *4 (N.D. Cal. Oct. 10, 2023) ("PAGA action compromising individual and

13  non-individual claims support this Court's subject matter jurisdiction so long as some claims—

14  either individual or non-individual—are preempted by federal law.").

15          Plaintiff requests the court "simply dismiss" any alleged violations that are found to be

16  preempted and decline to exercise supplemental jurisdiction over the remainder of the complaint.

17  (Doc. Nos. 9-1 at 18; 21 at 3-4.) In support of his request, Plaintiff asks the court to follow the

18  decision in *Renteria-Hinjosa v. Sunsweet Growers, Inc.*, No. 2:23-cv-01673-DJC-DB, 2023 WL

19  6519308, at *4 (E.D. Cal. Nov. 20, 2024). (Doc. No. 9-1 at 18.) Defendants oppose this request

20  and argue that Plaintiff's analysis of *Renteria-Hinjosa* is "misplaced", and that the court should

21  exercise supplemental jurisdiction over the remaining alleged violations that predicate Plaintiff's

22  PAGA claim. (Doc. No. 20 at 21.)

23          The court finds the decision in *Renteria-Hinjosa* to be distinguishable from this case. In

24  *Renteria-Hinjosa*, the court addressed the defendant's motion to dismiss in addition to the

25  plaintiff's motion to remand. 2023 WL 6519308, at *1. The *Renteria-Hinjosa* court found that the

26  plaintiff's claim for failure to pay timely wages was preempted under the applicable collective

27  bargaining agreement and separately, must be dismissed because the plaintiff failed to allege that

28  she had engaged in and exhausted the grievance procedure under the agreement. *Id*. at *4–5, 8.

1    Consequently, the court declined to exercise supplemental jurisdiction because the only claim

2    over which the court had jurisdiction was dismissed. *Id.*

3           At this juncture, the court has only found Plaintiff's overtime and paid sick leave

4    allegations to be preempted under § 301. Plaintiff contends it "makes no sense for this Court to

5    exercise [s]upplemental [j]urisdiction on claims attached to claims which it has ruled preempted

6    [] and therefore the Court knows it will be compelled to dismiss in short order[]." (Doc. No. 9-1

7    at 18.) But a claim that "is preempted under section 301 does not necessarily require that the

8    claim be dismissed . . . ." *Renteria-Hinjosa*, 2023 WL 6519308, at *7. Rather, if a claim is

9    preempted under the LMRA and a defendant seeks to dismiss that claim, the defendant must still

10   prove that the claim is subject to dismissal on a separate ground. *Id.* (citing *Seid v. Pac. Bell, Inc.*,

11   635 F. Supp. 906, 909 (S.D. Cal. 1985)).

12          The court finds it premature to dismiss Plaintiff's preempted overtime and sick paid leave

13   violations when no separate grounds for dismissal have been proffered. Plaintiff's remaining

14   alleged wage and hour violations all arise out of the same working conditions during the same

15   period of Plaintiff's employment. Therefore, the court will not dismiss Plaintiff's allegations of

16   overtime and paid sick leave violations.

17                                              **CONCLUSION**

18          For the reasons explained above:

19   1.     Plaintiff's motion to remand (Doc. No. 9) is denied as the court has either original

20          or supplemental jurisdiction over Plaintiff's PAGA claim;

21   2.     The parties shall meet and confer regarding the scheduling of this case and file a

22          joint status report within twenty-one (21) days from the date of entry of this order

23          that addresses the following:

24          a.     contemplated amendments to the pleadings, including to simplify or clarify

25                 the issues and eliminate previous claims and defenses;

26          b.     the statutory bases for jurisdiction and venue;

27          c.     anticipated discovery and the scheduling of discovery, including:

28                 i.      what changes, if any, should be made in the timing, form, or

1      requirement for disclosures under Rule 26(a), including a statement

2      as to when disclosures under Rule 26(a)(1) were made or will be

3      made, and whether further discovery conferences should be held;

4          ii.    the subjects on which discovery may be needed, when discovery

5      should be completed, and whether discovery should be conducted

6      in phases;

7          iii.    what changes, if any, should be made in the limitations on

8      discovery imposed under the Civil Rules, and what other

9      limitations, if any, should be imposed;

10         iv.    the timing of the disclosure of expert witnesses and information

11     required by Rule 26(a)(2); and

12         v.    proposed dates for discovery cut-off;

13         d.    contemplated dispositive or other motions and a proposed date by which all

14     non-discovery motions shall be filed;

15         e.    methods that can be used from the outset to avoid unnecessary proof and

16     cumulative evidence, and anticipated limitations or restrictions on the use

17     of testimony under Federal Rule of Evidence 702;

18         f.    a proposed date for final pretrial conference;

19         g.    a proposed date for trial, estimated number of days of trial, and whether

20     any party has demanded a jury;

21         h.    appropriateness of special procedures such as reference to a special master

22     or agreement to try the matter before the assigned magistrate judge

23     pursuant to 28 U.S.C. § 636(c);

24         i.    proposed modification of standard pretrial procedures because of the

25     simplicity or complexity of the case;

26         j.    whether the case is related to any other case pending in this district,

27     including the bankruptcy court of this district;

28         k.    optimal timing and method for settlement discussions, including whether a

18

court-convened settlement conference should be scheduled, whether in the case of a jury trial the parties will stipulate to the trial judge acting as a settlement judge, and the parties' positions with respect to Voluntary Dispute Resolution (VDRP) as required by Local Rule 271(d); and

l.      any other matters that may be conducive to the just and expeditious disposition of the case; and

3.      Defendants' January 8, 2024, request to vacate the initial pretrial scheduling order (Doc. No. 13), is denied as moot in light of this order.

IT IS SO ORDERED.

Dated:   **October 30, 2024**

Dena Coggins
United States District Judge