1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS SHANLEY,<br><br>Plaintiff,<br><br>v.<br><br>TRACY LOGISTICS LLC, et al.<br><br>Defendants. | No. 2:23-cv-02586-DC-JDP<br><br>ORDER GRANTING MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL PAGA CLAIM AND STAYING PLAINTIFF'S REPRESENTATIVE PAGA CLAIM<br><br>(Doc. Nos. 41, 42) |

    This matter is before the court on Defendants C&S Wholesale Grocers, LLC, formerly

C&S Wholesale Grocers Inc.; Tracy Logistics LLC; and Sacramento Logistics, LLC's

(collectively, "Defendants") motion to compel arbitration of Plaintiff Travis Shanley's individual

claim under California's Private Attorneys General Act, California Labor Code §§ 2698, *et seq.*,

("PAGA"), or to alternatively stay this action in its entirety. (Doc. No. 41.) The pending motion

was taken under submission to be decided on the papers pursuant to Local Rule 230(g). (Doc. No.

48.) For the reasons explained below, the court will grant Defendants' motion.

## BACKGROUND

    Defendant C&S Wholesale Grocers, LLC ("C&S") is a nationwide supply chain services

and wholesale grocery supply company that, through its operating subsidiary entities, supplies

grocery products to more than 6,000 independent supermarkets, chain stores, military bases, and

institutions in California and throughout the United States. (Doc. No. 41-1 at ¶ 5.) Defendant

1

1   Tracy Logistics LLC ("Tracy"), a subsidiary of Defendant C&S, operates a facility in Stockton,

2   California. (Doc. No. 41-1 at ¶¶ 5–6.)

3       Individuals working in the Stockton facility may be employed as order selectors,

4   receivers/unloaders, or loaders. (Doc. No. 49-1 at 6.) Order selectors receive assignments through

5   order sheets or an audio headset system to pick items from storage rack systems. (*Id*.) The order

6   selector then stacks the selected items on a pallet, wraps or bags the items on the pallet as

7   necessary, prints out a shipping label that identifies the customer's name, city, and state, and

8   attaches the label to the shipment. (*Id*. at 6–7.) According to Defendants, there are three

9   categories of order selectors for the three general categories of products received and stored at the

10   Stockton facility: perishable order selectors, frozen order selectors, and non-perishable grocery

11   order selectors. (*Id*. at 7–8.) Perishable order selectors procure only perishable produce, dairy,

12   meat, poultry, and seafood items for customer orders. (*Id*. at 7.)

13       On May 13, 2022, Plaintiff filed an application for employment with Defendant Tracy.

14   (Doc. No. 41-1 at 14.) As part of the application process, on May 16, 2022, Plaintiff reviewed and

15   electronically signed Defendant C&S's mutual arbitration agreement regarding wage and hour

16   claims ("the C&S MAA"). (*Id*. at 8, 18.) The C&S MAA contains a "Waiver of Class and

17   Collective Claims" that states "[C]overed Claims will be arbitrated only on an individual basis,

18   and that the Company and you waive the right to bring, participate in, join, or receive money or

19   any other relief from any class, collective, or representative proceeding." (*Id*. at 21.) Further, the

20   C&S MAA has a "Savings & Conformity Clause" that states "if the Waiver of Class and

21   Collective Claims [clause] is found to be unenforceable, then any claim brought on a class,

22   collective, or representative action basis must be filed in a court of competent jurisdiction, and

23   such court shall be the exclusive forum for such claims." (*Id*. at 25.)

24       On or about May 23, 2022, Plaintiff began working at the Stockton facility. (*Id*. at 4.) As

25   part of the onboarding process, Plaintiff was presented with and signed Defendant Tracy's mutual

26   voluntary arbitration agreement ("the Tracy MVAA"). (Doc. No. 41-2 at ¶ 5.) Throughout his

27   employment, Plaintiff worked as an order selector. (Doc. No. 46-1 at ¶ 2.) According to

28   Defendants, Plaintiff worked exclusively with perishable products. (Doc. No. 49-1 at 11–12.)

On September 21, 2023, in the San Joaquin County Superior Court, Plaintiff filed a representative action complaint under PAGA, on behalf of himself and all other aggrieved employees ("*Shanley I*"). (Doc. Nos. 1 at 1; 1-1.)[1] In the complaint, Plaintiff asserts a single cause of action against Defendants for violation of PAGA, predicated on Defendants' alleged violations of California's wage and hour laws, specifically:

> (1) failure to pay minimum wages for all hours worked; (2) failure to pay overtime wages; (3) failure to pay overtime, vacation pay, sick leave, and meal and rest break premiums at the correct regular rate of pay, (4) failure to provide sick leave and COVID-19 supplemental sick leave and to provide notice of accrued sick leave available; (5) failure to provide meal breaks; (6) failure to authorize and permit rest breaks; (7) failure to reimburse business expenses; (8) failure to comply with California quota laws; (9) failure to provide a safe and healthful workplace; (10) failure to timely pay wages during employment; (11) failure to provide accurate wage statements; and (12) failure to pay all wages due upon termination.

(Doc. No. 1-1 at ¶¶ 162–63.) On November 8, 2023, Defendants timely removed this action to this court. (Doc. No. 1.)

On April 3, 2024, Plaintiff filed a separate wage and hour class action complaint against Defendants in this court, alleging many of the same labor code violations that underlie Plaintiff's PAGA claim in *Shanley I. Shanley v. Tracy Logistics LLC, et al.*, No. 2:24-cv-01011-DC-JDP (Doc. No. 1) ("*Shanley III*").[2]

On July 12, 2024, Defendants filed in *Shanley III* a motion to compel arbitration of Plaintiff's individual claims and to stay all proceedings pending resolution of the arbitration. (*Shanley III*, Doc. No. 20.) In their motion, Defendants asserted Plaintiff's individual claims were subject to arbitration under the Federal Arbitration Act ("FAA"), and in the alternative, the

---

[1] That same day, Plaintiff also filed a separate declaratory relief action against Defendants in San Joaquin County Superior Court challenging the validity and enforceability of the Tracy MVAA. *Shanley v. Tracy Logistics LLC, et al.*, No. 2:23-cv-02608-DC-JDP ("*Shanley II*"). Defendants removed the declaratory relief action to this court on November 8, 2023. (*Id.*)

[2] In filing the pending motion to compel arbitration, Defendants concurrently filed a request that the court take judicial notice of the first amended class action complaint filed in *Shanley III*. (Doc. No. 42.) Because courts regularly take judicial notice of court filings and other matters of public record, the court will grant Defendants' request for judicial notice. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746, n. 6 (9th Cir. 2006).

California Arbitration Act ("CAA"). (*Id*. at 9.) In Plaintiff's opposition to that motion, he

acknowledged that he agreed to the C&S MAA, but he argued that agreement was unenforceable

under the FAA because he was a transportation worker engaged in interstate commerce and was

therefore exempt under 9 U.S.C. § 1. (*Shanley III*, Doc. No. 26 at 5–7.) In support of his

opposition, Plaintiff attached a declaration of his own detailing his work as an order selector

assembling grocery shipments for Defendants. (*Shanley III*, Doc. No. 26-1.) Plaintiff also argued

the C&S MAA could not be enforced under the CAA. (*Shanley III*, Doc. No. 26 at 7–9.) In reply,

Defendants argued Plaintiff failed to meet his burden to establish that he qualifies as a

transportation worker under 9 U.S.C. § 1 and that the FAA applied to his individual claims.

(*Shanley III*, Doc. No. 28 at 7–12.) Defendants also argued that "[s]ome of Plaintiff's claims"

must be compelled to arbitration under California law, even if the FAA does not apply to this

case. (*Shanley III*, Doc. No. 28 at 15.)

On January 2, 2025, the court issued an order in *Shanley III*, granting in part Defendants'

motion to compel arbitration of Plaintiff's individual claims and staying proceedings pending

resolution of that arbitration. (*Shanley III*, Doc. No. 36.) The court found that an arbitration

agreement, the C&S MAA, existed between the parties. (*Id*. at 7.) However, the court found

Plaintiff had made a sufficient showing that he is a transportation worker under 9 U.S.C. § 1, and

consequently the court rejected Defendants' argument that the C&S MAA was governed by the

FAA. (*Id*. at 9–12.) Instead, the court found the C&S MAA could be enforced under the CAA and

ordered the following individual causes of action be submitted to arbitration:

> (1) failure to reimburse for necessary business expenses pursuant to
> Labor Code section 2802, (2) failure to provide accurate wage
> statements pursuant to Labor Code section 226, (3) failure to pay all
> wages due upon termination pursuant to Labor Code sections 201–
> 03, (4) failure to comply with California quota laws pursuant to
> Labor Code section 2100 *et seq*., and (5) violation of Business and
> Professions Code section 17200 *et seq*.

(*Shanley III*, Doc. Nos. 25 at ¶¶ 107–48; 36 at 14.) The court ordered Plaintiff's remaining

individual claims and class claims be stayed pending completion of the arbitration proceedings.

(*Shanley III*, Doc. No. 36 at 14.)

On April 23, 2025, Defendants filed in this action the pending motion to compel

4

arbitration of Plaintiff's individual claim under PAGA, or, in the alternative, stay this action in its entirety. (Doc. No. 41.) In their motion, Defendants contend Plaintiff's individual claim under PAGA must be compelled to arbitration under the FAA or CAA, and his representative claim under PAGA should be dismissed or stayed. (*Id*. at 29–33.) In the alternative, Defendants request the court stay this case pending completion of the arbitration proceedings ordered in *Shanley III*. (*Id*. at 33–36.)

On May 7, 2025, Plaintiff filed an opposition to Defendants' motion to compel arbitration. (Doc. No. 46.) In support of his opposition, Plaintiff attached the same declaration previously submitted in *Shanley III*. (Doc. No. 46-1.) On May 19, 2025, Defendants filed a reply to Plaintiff's opposition and evidentiary objections to certain portions of Plaintiff's declaration.[3] (Doc. Nos. 49; 49-2.) Defendants also attach a declaration from John Normandin, a director of operations for C&S, in support of their reply. (Doc. No. 49-1.) Mr. Normandin's declaration includes a copy of his declaration that was filed in *Shanley III* and one new statement that "approximately 95% of the customer store locations to which products were delivered by volume were in California" and "[t]hus, only approximately 5% of the customer stores to which goods were ultimately shipped by volume were out-of-state." (*Id*. at 3–12.)

## LEGAL STANDARDS

### A.    Private Attorneys General Act

Under PAGA, "any 'aggrieved employee' [may] initiate an action against a former

---

[3] Notably, Defendants raise the same evidentiary objections that they raised to Plaintiff's declaration in *Shanley III*. As the court did in *Shanley III* and for the same reasons (*See Shanley III*, Doc. No. 36 at 5–6), Defendants' objections to Plaintiff's statements regarding non-perishable products are sustained on relevancy grounds. Next, the court overrules Defendants' objections to Plaintiff's statements that he knew where shipments were going and where some of the groceries had come from because he saw shipping labels. (Doc. No. 49-2 at 2–3.) The court finds Defendants' contention that these statements lack foundation, personal knowledge, and constitute inadmissible hearsay unavailing because such objections may be considered by the court in ruling on a motion to compel arbitration so long as the evidence could be presented in an admissible form at trial. (*See Shanley III*, Doc. No. 36 at 6) (citing *Pierre v. Iec Corp.*, No. 22-cv-01289-FWS-JDE, 2023 WL 3551962, at *4, n. 1 (C.D. Cal. Mar. 14, 2023)). Lastly, the court overrules Defendants' objection that those same statements are based on pure speculation because Plaintiff has provided sufficient facts showing he has personal knowledge to make the statements at issue. (*See Shanley III*, Doc. No. 36 at 6.)

1   employer 'on behalf of himself or herself and other current or former employees' to obtain civil

2   penalties that previously could have been recovered only by the State in an [administrative]

3   enforcement action." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 644 (2022) (quoting

4   Cal. Lab. Code § 2699(a)). A PAGA action is comprised of two types of claims: (1) an individual

5   claim, through which the aggrieved employee seeks to vindicate his or her rights with respect to

6   violations that the employee personally experienced; and (2) a representative claim, through

7   which the aggrieved employee seeks to vindicate the rights of other aggrieved employees. *Viking*

8   *River*, 596 U.S. at 644. "Effectively, PAGA allows aggrieved employees to act as private

9   attorneys general and file suit as proxies of the state" when the California Labor and Workforce

10  Development Agency declines to investigate or prosecute alleged labor law violations. *Ortega v.*

11  *UnitedHealth Grp., Inc.*, No. 23-cv-05596-JST, 2024 WL 4495817, at *7 (N.D. Cal. Oct. 15,

12  2024) (citing *Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104, 1113 (2023)); *see also Baumann v.*

13  *Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1121 (9th Cir. 2014).

14  **B.      Federal Arbitration Act**

15          The FAA governs written arbitration agreements affecting interstate commerce and

16  provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save

17  upon such grounds as exist at law or in equity for the revocation of any contract." *Circuit City*

18  *Stores, Inc. v. Adams*, 532 U.S. 105, 111–12 (2001); 9 U.S.C. § 2. "By its terms, the [FAA] leaves

19  no place for the exercise of discretion by a district court, but instead mandates that district courts

20  shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has

21  been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 479 U.S. 213, 218 (1985) (citing 9 U.S.C.

22  §§ 3–4); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("[C]ourts must

23  place arbitration agreements on an equal footing with other contracts and enforce them according

24  to their terms.") (internal citation omitted).

25          In weighing a motion to compel arbitration under the FAA, a court must determine: "(1)

26  whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement

27  encompasses the dispute at issue." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023)

28  (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). If

1    both conditions are met, the FAA requires the court to enforce the parties' arbitration agreement

2    by its terms. *Chiron Corp.*, 207 F.3d at 1130. "When considering a motion to compel arbitration,

3    a court applies a standard similar to the summary judgment standard of [Federal Rule of Civil

4    Procedure] 56." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (quoting

5    *McCarthy v. Providential Corp.*, No. 94-cv-00627-FMS, 1994 WL 387852, at *2 (N.D. Cal. Jul.

6    19, 1994)). The party seeking to compel arbitration bears the burden of proving by a

7    preponderance of the evidence the existence of an agreement to arbitrate. *Godun v. JustAnswer*

8    *LLC*, 135 F. 4th 699, 708 (9th Cir. 2025) (citing *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th

9    Cir. 2023)).

10                                    **DISCUSSION**

11    **A.    An Arbitration Agreement Exists Between the Parties**

12            "With respect to the moving party's burden to provide evidence of the existence of an

13    agreement to arbitrate, it is generally sufficient for that party to present a copy of the contract to

14    the court." *Baker v. Italian Maple Holdings*, *LLC*, 13 Cal. App. 5th 1152, 1160 (2017). "When

15    deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should

16    apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi.,*

17    *Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In California, "[m]utual assent is determined under an

18    objective standard applied to the outward manifestations or expressions of the parties, i.e., the

19    reasonable meaning of their words and acts, and not their unexpressed intentions or

20    understandings." *Alexander v. Codemasters Grp. Ltd.*, 104 Cal. App. 4th 129, 141 (2002),

21    disapproved on other grounds by *Reid v. Google, Inc.*, 50 Cal. 4th 512, 524 (2010).

22            Here, Defendants have presented a copy of the C&S MAA, which Plaintiff electronically

23    signed on May 16, 2022. (Doc. No. 41-1 at 15.) Defendants assert the C&S MAA covers

24    Plaintiff's PAGA claim against them. (Doc. No. 41 at 27–29.) In his opposition, Plaintiff does not

25    contest that the C&S MAA applies to the parties and covers his PAGA claim. (Doc. No. 46 at 5.)

26    The court finds Defendants have met their burden of showing a valid arbitration agreement exists

27    (the C&S MAA), that the parties agreed to that agreement, and that the agreement encompasses

28    Plaintiff's PAGA claim.

1    Therefore, under the FAA, the court is required to enforce the terms of that arbitration

2    agreement, unless an exception to the FAA applies. Plaintiff argues in his opposition to the

3    pending motion that the FAA does not apply to him because he is a transportation worker under

4    Title 9, United States Code, section 1. (Doc. No. 46 at 5–8.)

5    **B.        The FAA's Transportation Worker Exemption**

6        The FAA does not apply to employment contracts of "any other class of workers engaged

7    in foreign or interstate commerce." 9 U.S.C. § 1. This exemption has been construed to

8    encompass "transportation workers" who are "actively engaged" and "play a direct and necessary

9    role in the free flow of goods across borders." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458

10    (2022) (citing *Circuit City*, 532 U.S. at 121). A transportation worker is not required to work for a

11    company in the transportation industry to be exempt under § 1 of the FAA. *Bissonnette v. LePage*

12    *Bakeries Park St., LLC*, 601 U.S. 246, 252 (2024). Further, the transportation worker does not

13    have to cross state borders. *See Saxon*, 596 U.S. at 458 (holding "one who loads cargo on a plane

14    bound for interstate transit" is a transportation worker); *Lopez v. Aircraft Serv. Int'l Inc.*, 107 F.

15    4th 1096, 1103 (9th Cir. 2024) (concluding a fuel technician who places fuel in a plane used for

16    foreign and interstate commerce is a transportation worker); *Rittmann v. Amazon.com, Inc.*, 971

17    F.3d 904, 909 (9th Cir. 2020) (holding drivers who made the "last mile" deliveries of packaged

18    products from Amazon warehouses were engaged in the movement of interstate commerce and

19    were transportation workers). The party resisting arbitration under this exemption "bear[s] the

20    burden of proving that [the] exemption applies." *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 913

21    (N.D. Cal. 2020) (citing *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1151 (9th Cir.

22    2008)).

23        In assessing whether an employment contract comes within the scope of the FAA's

24    transportation worker exemption, a court engages in a two-step analysis. *Ortiz v. Randstad*

25    *Inhouse Servs., LLC*, 95 F. 4th 1152, 1159 (9th Cir. 2024). First, the court defines the "relevant

26    class of workers" to which the employee belongs. *Id.* (citing *Saxon*, 596 U.S. at 455). The

27    relevant class of workers is determined with reference to "the specific nature of [the employee's]

28    work, not [the] employer's status as a transportation company . . ." *Id.*; *see also Saxon*, 596 U.S.

8

1    at 456 (holding an employee "is therefore a member of a 'class of workers' based on what she

2    does at Southwest, not what Southwest does generally."). Second, the court determines whether

3    that class of workers is actively engaged in foreign or interstate commerce and plays a tangible

4    and meaningful role in the movement of goods across borders. *Ortiz*, 95 F.4th at 1159–60, 1162.

5        In their reply, Defendants argue Plaintiff has failed to meet his burden to establish he

6    qualifies as a transportation worker under 9 U.S.C. § 1. (Doc. No. 49 at 7–15.) However, the court

7    already considered and rejected Defendants' arguments on whether Plaintiff qualified as a

8    transportation worker under 9 U.S.C. § 1 in *Shanley III*. (*See Shanley III*, Doc. No. 36 at 7–12.)

9    Defendants' assert the same argument, which remain unpersuasive for the following reasons.

10       First, Defendants continue to argue a warehouse worker is a not a transportation worker

11   and an extension of the transportation worker's exemption in 9 U.S.C. § 1 is inconsistent with

12   Supreme Court precedent. (*Id.* at 15.) The court addressed this argument and determined that

13   "follow[ing] binding precedent . . . under *Ortiz*, warehouse workers who move products within a

14   warehouse may qualify as a transportation worker under [9 U.S.C.] § 1." (*Shanley III*, Doc. No.

15   36 at 10.) Next, Defendants reassert "Plaintiff belonged to a class of Tracy warehouse workers

16   who select predominantly California sourced perishable products ordered by predominantly

17   California customers from the existing inventory at [the Stockton facility]." (Doc. No. 49 at 8.)

18   However, Defendants' definition does not adequately define the relevant class, and the court

19   again finds instead that "Plaintiff belonged to a class of workers that handled and prepared

20   perishable products for shipment." (*Shanley III*, Doc. No. 36 at 9.)

21       Defendants also argue Plaintiff's class of workers were not engaged in interstate

22   commerce because they predominantly worked with intrastate goods and did not handle goods

23   that traveled across state lines on a frequent basis. (Doc. No. 49 at 11–14.) In support of this

24   argument, Defendants point to estimates provided by Mr. Normandin in *Shanley III*, and one new

25   estimate that "[d]uring Plaintiff's employment with Tracy at the Stockton Facility, approximately

26   95% of the customer store locations to which products were delivered by volume were in

27   California." (Doc. Nos. 49 at 1, 9; 49-1 at ¶ 6.) However, these estimates do not alter the court's

28   prior finding that Plaintiff frequently handled perishable products that came from out of state and

1  was thus actively engaged in interstate commerce. (*See Shanley III*, Doc. No. 36 at 11–12.)

2            Defendants also argue Plaintiff did not belong to a class of workers who engaged in

3  interstate commerce because any products they handled that came from outside of California were

4  not a part of a single, unbroken chain of interstate commerce. (Doc. No. 49 at 13–14.) According

5  to Defendants, any out-of-state goods came to rest at the Stockton facility, and any subsequent

6  transaction to a California customer was "functionally" a separate local transaction. (*Id*. at 13.)

7  The court again rejects this argument because "the fact perishable products paused their journey

8  at the Stockton facility until they were inevitably delivered to Defendants' known customers did

9  not remove them from the flow of interstate commerce." (*See Shanley III*, Doc. No. 36 at 12.)

10            Accordingly, because the court continues to find Plaintiff has made a sufficient showing

11  that he is a transportation worker under 9 U.S.C. § 1, the court finds Plaintiff is exempt from

12  coverage under the FAA. In light thereof, Defendants are not entitled under the FAA to an order

13  compelling Plaintiff to arbitrate his individual PAGA claim.

14  **C.       The California Arbitration Act Applies**

15            Because the FAA does not apply to Plaintiff's individual PAGA claim, the court now

16  turns to whether Plaintiff can be compelled to arbitrate that claim under California law,

17  specifically through the CAA.

18            Under the CAA, arbitration agreements are "valid, enforceable and irrevocable, save upon

19  such grounds as exist for the revocation of any contract." Cal. Civ. Proc. Code § 1281; *see*

20  *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 99 (2000) (explaining that

21  California law, like federal law, generally "favors enforcement of valid arbitration agreements").

22  As with motions to compel arbitration under the FAA, courts evaluate motions to compel

23  arbitration brought under the CAA using a summary judgment standard. *Lane v. Francis Cap.*

24  *Mgmt. LLC*, 224 Cal. App. 4th 676, 683 (2014).

25            In his opposition to the pending motion, Plaintiff argues that because the FAA does not

26  apply to him, neither his individual nor representative claims under PAGA can be compelled to

27  arbitration in light of the California Supreme Court's decision in *Iskanian v. CLS Transportation*

28  *Los Angeles, LLC*, 59 Cal. 4th 348 (2014). (Doc. No. 46 at 5–12.) In *Iskanian*, the California

1  Supreme Court issued two rules concerning PAGA, which have been acknowledged by the Ninth

2  Circuit and the United States Supreme Court. The first rule prohibited the contractual waiver of

3  the right to bring a representative (non-individual) PAGA claim in any forum. *Viking River*, 596

4  U.S. at 662. The second rule—the rule at issue in this case—was what courts understood to be a

5  "mandatory joinder rule that forbade dividing PAGA claims into individual and representative

6  claims." *McBurnie v. RAC Acceptance East, LLC*, 95 F. 4th 1188, 1192 (9th Cir. 2024); *Tapia v.

7  Paragon Sys., Inc.*, No. 25-cv-02971-AH-MAR, 2025 WL 1588179, at *3, n. 1 (C.D. Cal. Jun. 5,

8  2025).

9          In the wake of *Iskanian*, some state courts have held that employers may not require

10  employees to split PAGA actions into individual and representative components. *Adolph*, 14 Cal.

11  5th at 1118; *Ford v. The Silver F, Inc.*, 110 Cal. App. 5th 553, 563 (2025); *see Williams v.

12  Superior Court*, 237 Cal. App. 4th 642, 649 (2015) ("a single representative PAGA claim *cannot*

13  be split into an arbitrable individual claim and a nonarbitrable representative claim") (emphasis in

14  original); *Perez v. U-Haul Co. of Cal.*, 3 Cal. App. 5th 409, 421 (2016) (agreeing with *Williams*

15  that a PAGA action cannot be split into individual and represeantive components under *Iskanian*);

16  *Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73, 87 (2020) ("There is no individual component to a

17  PAGA action because 'every PAGA action . . . is a representative action on behalf of the state.'")

18  (quoting *Iskanian*, 59 Cal. 4th at 387).

19          In *Viking River*, the United States Supreme Court considered whether the FAA preempted

20  *Iskanian*'s rules and held the FAA does preempt *Iskanian*'s second rule "preclud[ing] division of

21  PAGA actions into individual and [representative] claims through an agreement to arbitrate."

22  *Viking River*, 596 U.S. at 649. Specifically, the Supreme Court found this rule unduly interfered

23  with the parties' freedom to determine the issues subject to arbitration and the rules by which they

24  will arbitrate, and the rule violates the fundamental principle that arbitration is a matter of

25  consent. *Id.* at 659. The Supreme Court reasoned that requiring parties to adjudicate a PAGA

26  action fully in one proceeding "compels parties to either go along with an arbitration in which the

27  range of issues under consideration is determined by coercion rather than consent, or else forgo

28  arbitration altogether. Either way, the parties are coerced into giving up a right they enjoy under

11

the FAA." *Id*. at 661. Thus, the Supreme Court concluded enforcement of an agreement to arbitrate a Plaintiff's individual PAGA claim is required if the agreement is covered by the FAA. *Id*. at 662.

However, this conclusion left the Supreme Court with a "remaining question" on what lower courts should do with representative PAGA claims after their individual counterparts were compelled to arbitration. *Id*. at 662–63. In addressing this remaining question, the Supreme Court found that PAGA "provides no mechanism to enable a court to adjudicate [representative] PAGA claims once an individual claim has been committed to a separate proceeding." *Id*. at 663. The Supreme Court then concluded that the right path was to dismiss a plaintiff's representative PAGA claim for lack of statutory standing when that plaintiff's individual PAGA claim was compelled to arbitration. *Id*. at 663.

A year after *Viking River* was decided, the California Supreme Court issued its decision in *Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104 (2023) to "correct[] *Viking River*'s misinterpretation of PAGA." *Johnson v. Lowe's Home Ctrs., LLC*, 93 F.4th 459, 464 (9th Cir. 2024); *see Diaz v. Macys West Stores, Inc.*, 101 F.4th 697, 705 (9th Cir. 2024) (finding "*Adolph*'s holding is the final and binding authority on the meaning of PAGA"). First, the California Supreme Court held that even when an agreement compelled arbitration of a plaintiff's individual PAGA claims, that order "does not strip the plaintiff of standing to litigate [representative] claims in court." *Adolph*, 14 Cal. 5th at 1123. Second, the court held that "[w]hen a case includes arbitrable and nonarbitrable issues, the issues may be adjudicated in different forums while remaining part of the same action." *Id*. at 1124. Specifically, the court found that "[n]othing in PAGA or any other relevant statute suggests that arbitrating individual claims effects a severance," and California Civil Procedure Code section 1281.4 "does not contemplate that the compelled arbitration of an issue in controversy in the action is a separate action." *Id*. at 1124–25.

Following *Adolph*, when evaluating agreements to which the FAA does not apply, some courts have compelled individual PAGA claims into arbitration and stayed representative PAGA claims pending completion of that arbitration. *See Bonilla v. Young's Mkt. Co.*, No. 24-cv-03489-EMC, 2025 WL 916020, at *5–6 (N.D. Cal. Mar. 26, 2025); *Neims v. Neovia Logistics Distrib.,*

1    *LP*, No. 23-cv-00716-PA-SHK, 2023 WL 6369780, at *2–5, n. 2 (C.D. Cal. Aug. 10, 2023);

2    *Hagler v. Activ Enters.,* No. 24-cv-00990-DSF-SK, 2024 WL 5375788, at *3, 5 (C.D. Cal. Nov.

3    22, 2024); *Morales v. Activ Enters., LLC*, No. 23-cv-05943-DSF-SK, 2023 WL 11886019, at *6,

4    n. 3 (C.D. Cal. Nov. 6, 2023); *see also Tapia*, 2025 WL 1588179, at *3, n. 1 (finding that under

5    *Adolph* individual and representative PAGA claims may be partially severed, such that a

6    plaintiff's individual PAGA claims may be sent to arbitration while the plaintiff's representative

7    PAGA claims remain in court).

8         The court finds the analysis offered in *Bonilla* and *Neims* to be persuasive. In *Bonilla*, the

9    court found that the plaintiff was a transportation worker and was consequently exempt from the

10   FAA. *Bonilla*, 2025 WL 916020, at *4–5. Turning to California law under *Adolph*, that court

11   determined plaintiff's individual PAGA claim could be compelled to arbitration and his

12   representative PAGA claim stayed because doing so did not create "severed" or separate

13   proceedings from one another. *Bonilla*, 2025 WL 916020, at *6 (citing *Adolph*, 14 Cal. 5th at

14   1125). Similarly, in *Neims*, the court found that the plaintiff was exempt from the FAA because

15   he was a transportation worker. 2023 WL 6369780, at *2–4. Relying on *Adolph*, that court found

16   California law did not preclude the arbitration of Plaintiff's individual PAGA claim, and that "the

17   arbitrator may determine Plaintiff's individual PAGA claim and leave the representative PAGA

18   claim for the [c]ourt to determine." *Id*. at *5, n. 2.

19        The court is not persuaded by Plaintiff's contention in his opposition to the pending

20   motion that when the FAA does not apply, *Iskanian's* second rule against splitting individual or

21   representative PAGA claims to arbitration continues to control. (Doc. No. 46 at 10.) In support of

22   his contention, Plaintiff relies on the "full analysis" offered in *Lopez v. Thyssenkrupp Supply*

23   *Chain Servs., NA. Inc.*, No. 23-cv-03368-VC, 2024 WL 3211492 (N.D. Cal. Jun. 28, 2024). (*Id.*)

24   Plaintiff's reliance on the decision in *Lopez* is unavailing, however, because that court did not

25   provide a full analysis on whether *Iskanian's* second rule applied. In fact, that court provided no

26   analysis and instead summarily concluded that the applicable arbitration agreement's "individual

27   action requirement" was against a rule "splitting individual and nonindividual components of a

28

1    PAGA claim into separate proceedings." *Lopez*, 2024 WL 3211492, at *1.[4]

2         Here, the C&S MAA provides for Plaintiff's individual PAGA claim to be arbitrated and

3    that any representative claim be filed in a court of competent jurisdiction. (Doc. No. 41-1 at 21,

4    25.) Because *Adolph* holds that a PAGA claim "remains one action" when its individual

5    component is compelled to arbitration, the court finds an order compelling Plaintiff's individual

6    PAGA claim to arbitration and staying his representative PAGA claim does not constitute

7    splitting the action and/or result in a conflict with state law. 14 Cal. 5th at 1125. Accordingly, the

8    court will grant Defendants' motion to compel arbitration of Plaintiff's individual PAGA claim

9    and stay his representative PAGA claim pending resolution of the arbitration. *See Bracamontes v.*

10   *United Rentals, Inc.,* No. 23-cv-02697-DAD-CSK, 2024 WL 1884052, at *6 (E.D. Cal. Apr. 30,

11   2024) (staying "plaintiff's representative PAGA claims in keeping with the decision and

12   instruction of the California Supreme Court in *Adolph*").

13                                          **CONCLUSION**

14        For the reasons explained above:

15   1.   Defendants' request for judicial notice (Doc. No. 42) is GRANTED;

16   2.   Defendants' motion to compel arbitration of Plaintiff's individual claim under

17        California's Private Attorneys General Act (Doc. No. 41) is GRANTED;

18   3.   Plaintiff shall submit his individual PAGA claim to arbitration;

19   4.   Plaintiff's representative PAGA claim is STAYED pending the completion of

20        arbitration proceedings;

21   5.   The parties shall file a joint status report ninety (90) days from the date of entry of

22        this order, and every 90 days thereafter, regarding the status of the arbitration

23        proceedings; and

24   /////

---

25   [4] The court acknowledges the Ninth Circuit affirmed the district court's decision in *Lopez v.*
26   *Thyssenkrupp Supply Chain Servs., NA. Inc.*, No. 23-cv-03368-VC, 2024 WL 3211492 (N.D. Cal.
     Jun. 28, 2024) on August 22, 2025. *Lopez v. Thyssenkrupp Supply Chain Servs. N.A., Inc.*, No.
27   24-4633, 2025 WL 2427620 (9th Cir. Aug. 22, 2025). However, the Ninth Circuit's decision did
     not address *Iskanian* nor otherwise address whether courts may split individual and representative
28   PAGA claims when compelling arbitration.

1         6.      Within fourteen (14) days of the completion of the arbitration proceedings, the

2         parties shall file a joint status report to notify the court of the arbitrator's decision

3         and request that the stay of this case be lifted.

4

5         IT IS SO ORDERED.

6   Dated:  __**January 7, 2026**__

                                        Dena Coggins

7                                           United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28